We'll proceed to the next case to be argued. I think that's McMahon versus, where's the date sheet? The next case to be argued is McMahon versus, bring that closer, versus World Vision. And this case is also set for 15 minutes per side. So we'll hear first from Appellant. May it please the Court, Daniel Blomberg for Appellant. I'd like to reserve three minutes for rebuttal. Counsel, watch your own time. I'll try to remind you, but I can't promise it, if you're in the midst of argument. So you should watch your clock. But, of course, if any judge is inquiring about an issue, to them you should answer fully and we'll give you extra time. Thank you, Your Honor. This case concerns an important question. May religious ministries ask their representatives to comply with their sincere religious beliefs? The answer is yes, as confirmed by several overlapping fundamental rights that all converge here. And I'll start with the right that courts most often apply in this context, which is the ministerial exception. The role at issue here is protected by the ministerial exception because it concerns and is important to carrying out the religious mission of World Vision, especially under this circuit's broad view of who counts as a minister under the Markle case. It is undisputed, as you can see at reply brief at page 5, that the role here was responsible for publicly communicating World Vision's faith to supporters and the public, to inviting partners to join World Vision's ministries, to teaching the faith to coworkers, participating in regular religious teaching times and chapel services, regularly praying with coworkers, and spiritual growth of supporters, partners, and donors. Counsel, could I ask you a question right at the top of your decision tree? You said that there's several overlapping claims or rights that are converging. You've started with the ministerial exception, which is the focus certainly at my notes, for what it's worth. That's a defense, right, to the Title VII claim and to the Washington's counterpart to Title VII. Yes, Your Honor. So my first question is whether we would need to go any farther than a ministerial exception. No, Your Honor. That would resolve both claims that are before this Court. Right. Okay. So, well, then I'll stay out of your way. You're going to talk about the ministerial exception next? Yes, Your Honor. Okay. Then I'll listen. Right. Right. So we have that list of undisputed duties that the representatives perform here, and there are four unique ones that I want to draw the Court's attention to. The first one is a uniquely important religious function that the District Court found and that Ms. McMahon concedes, which is that the representatives were required to or expected to regularly pray with supporters. They also were expected to provide intensive engagement with donors daily on World Vision's religious mission and message. They were also required to embody and express World Vision's mission and vision daily with the general public. And finally, they received enhanced training that was unique to this role. Only these types of employees, this class of employees, received this training so they could perform all of those functions, including the ones that were unique to their role. Counsel, as I understand it, the deposition of the human resources vice president was taken and Ms. McMahon's deposition was taken. Was there any testimony from the supervisor of the CSRs as to exactly what they do on a daily basis? Yes, Your Honor. The thing that's a little bit hard for me is we're dealing with an applicant who never even started the job, and human resources director testified on her deposition that she could only go by what she read in the job description because she'd never supervised that aspect of World Vision's operation. Two answers, Your Honor. One, you're right that Ms. Freeburg was deposed in her personal capacity as a fact witness, but then she also was deposed as a 30B6 witness, and in preparation for that testimony, she did familiarize herself with the duties of a representative position. Also, we have the declaration testimony from Shannon Osborne that goes into the day-to-day functions and provides a long list. Pretty much all the things that I'm referring this court to are from either 30B6 or those declarations. I think I know the answer to this, but are there any other designated employees who are on the payroll of World Vision who would carry out similar ministerial functions? Not the four unique ones that I pointed, Your Honor, to, no. It seems to me that, and I think you argue this extensively, that they really are the face of World Vision to the outside world. Correct, Your Honor. I mean, we don't have a megachurch here or any kind of a building where people come on Sundays to pray together. This is all done through the CSRs. Correct, Your Honor. So the individuals who are connecting with World Vision to provide support to carry out the ministry, they're talking to the representatives, and then the public who's looking for information about how to get involved with World Vision's ministry, they're talking to the representatives. And when they're talking to partners, when they're talking to pastors and other church leaders about how they can join into World Vision's ministry, they're talking to the representatives, and that's a role. We found in the record an estimate that they make up roughly 8% of World Vision's 1,000 employees, so about 80 employees out of 1,000. Does that sound right? Pretty close, Your Honor. I think the number that I was looking at was 6.5%, so about 60. But it's a very small number in relation to the total number of employees worldwide. Right. And compared to, say, like in Our Lady of Guadalupe, where most of the employees at a Catholic elementary school are going to have similar employees to Ms. Morisibero and Ms. Beale, that's not true here. Most employees do not have the duties of representatives. And how about the overseas activities? Are there World Vision employees who are actually overseas administering the funds that are being allocated to charitable and ministerial purposes? Your Honor, I think we have less in the record about overseas employees because this is World Vision USA that's before this court. But even as among all the class of employees, the only ones that have the unique functions I pointed this court to are representatives. Okay. Thank you. I have sort of a related question because I think it would be really problematic if we isolated various tasks because any job can be broken down to tasks that are, if we did that in a way that divorced the tasks from the mission, that would sort of miss the point. It is possible, right, to consider that somebody who engages with donors on the phone is the equivalent of somebody working in a call center and to sanitize it in that way. But I think Our Lady of Guadalupe talks about the functions, and we know we have to look at the Supreme Court has told us regardless of title, we're looking at what does this person do, right? But I think that it hints my concern about isolating tasks. I do not mean to offend anyone by this. One could say, oh, that person is serving bread as opposed to, you know, if you didn't recognize, well, that's part of communion, right? And so I'm really just trying to, maybe I'm doing this awkwardly, but I'm trying to explain the concern I have about isolating tasks. I think Our Lady of Guadalupe says we have to figure out when I put these Supreme Court cases together, we have to look at the functions, what does the person do in relation to the mission. Correct, Your Honor. Okay. So for me, this seems to be not really articulated in any of our existing precedent, maybe because the earlier ones just didn't, you know, call us to look at this. But that's why it seems to me to be really critical to take into account the particular mission here. I think that's correct, Your Honor. All right. So this is really for opposing counsel to respond to, too, because for me this is the nub of the case. What we have is a record that says for this particular church, the mission includes interacting with donors to raise funds to, you know, provide services to the poor on the back end. And so that's what I'm looking at, and I just want to invite you all to discuss that. That's not true. One of the tasks you have identified within this job description includes praying with donors and praying internally within the organization. I don't think that can be divorced from the mission, but there are other tasks that can be. If you're just talking about taking calls or placing calls. And so I just want to put that out there and give you both a chance to respond. Yes, Your Honor. I think a couple points on that. One, I think the Barron case does a good job of pointing out what Your Honor was worried about, which is where you abstract from the physical act and say, well, that physical act looks like nothing of significant importance to me. But in the context of the religious community, it's very important, like communion or like serving in a role that looks like maintenance work, but in the context of Zen Buddhism, is very important to being a monk, a work practice apprentice within that faith group. And so it is important to understand the mission. And I think an important part of the mission here, too, is it's not just to funnel money from point A to point B. It's to express the religious beliefs of World Vision. World Vision is first and foremost a religious organization that wants to express its religious views through this ministry. So could I stop you there? I think that's exactly right. So it's one thing to say your job includes reaching out to donors, talking to them on the phone, praying with them if they want to pray, right? But another worker in this organization with this same mission, if her job were putting a stamp on an envelope that requested money and putting that in the mail, that might have a very different outcome here. Would you agree? Yes, Your Honor, that's correct.  Yes. So you look, you know, Our Lady of Guadalupe in this course of the precedent requires looking closely at the functions of the position. The Supreme Court said in Our Lady that at bottom it's the function that matters. And so you do a careful analysis of those functions. And here you really have an unusually high level of expectations on this class of employees, which, as Judge Tolman pointed out, is a very small class of employees within the organization. But even if it were a very large, it could be very large. The number of workers doesn't do much for me, just for your benefit. You can push back on that for me. I think we're looking at what they're doing. And so why should I be influenced by the number of people in the workforce that are – It is not dispositive, Your Honor. The number is not the question. Again, like as in Our Lady, you had a situation where most employees at a Catholic elementary school are going to be similar to the plaintiffs in that case. That didn't influence the court's analysis whatsoever. They're worried about floodgates, and they're worried about really important Title VII protections, as you know. So to use a silly hypothetical, but maybe it illustrates the point, I think their concern is if we do what you want us to do, that a religious organization would be free to rewrite a job duty and require that everybody pray internally or – I'm just making a silly example – that would then sidestep Title VII and create what they call a floodgates problem. Right. Do you want to speak to that? Yes. And the Supreme Court has addressed this, and other courts have addressed it, I think the Seventh Circuit several times, where you have – people have kind of hooked up religious duties for the occasion. It's a fake. We don't have that kind of record here. That's not the situation. These duties were in place for many, many years before Ms. McMahon ever applied. They're still in place now. They're the sincere duties of the organization. I think thousands of prayer requests come in to each representative every year that they are responsible for assisting with and often praying over. So these aren't in any way a situation like the concern that would generate that kind of floodgates consideration. Here we're dealing with sincere expectations that are required of the role and an unusually high number of expectations. So this is far from floodgates. This is a narrow disposition. But even Our Lady of Guadalupe and the related Catholic teacher case seem to say that we don't look at the total amount of time that the employee devotes to secular versus religious functions. We look at what the functions are.  Because the key is are they doing something important to the religious mission? Because then it doesn't matter if it's a few minutes or a few hours. That was exactly the point that this court made in the Alcazar merits panel opinion where it said if we're trying to tabulate minutes here and minutes there, then we're missing the point. And in the Barron case, the religious function there were a few minutes of every day. They weren't most of the day. Hosanna Tabor, it was not even close to a majority of the day. It was 45 minutes a day. So when this court has been looking at the question, they're asking are they performing important religious functions? And here that's shown by the record in spades. It is not often that we have a district court doing what it did. This is a hard question. I appreciate. But it was a flip. So I'm a former trial court judge. I have a lot of empathy for that. These are tough cases. I think the first time around the McDonnell-Douglas test was applied. Is that right? And then there was a Rule 59. That was error. But a different result on the back end. Do you want to talk about what you think where the district court got this wrong on the back end? I think the confusion there, Your Honor, was thinking that the church autonomy doctrine, separate from the ministerial exception, but church autonomy's relationship to religious and personnel decisions, only boils down to pretext inquiries. If it's a pretext inquiry, the judge below said it's out. If it's not a pretext inquiry, then the case can proceed. I think that's a mistake. I think one of the ways you can see that is by looking at Milovojevic, which says that religious organizations can set the standards for religious organizations. And it didn't say anything about if there's a question about if they're lying or not, which is the only time that the decision below would allow that type of protection to come into play. So I think that was the confusion. One way to see it, too, is if that was the rule, then the First Amendment would provide no independent protection for requiring someone to even be a part of your faith group. A Jewish organization could be required to hire an evangelical Christian and have no protection as it regards to non-ministerial employees on that sort of basis. That's just not the law. Now, Bill, did you want to reserve some time? Your Honor, I would like to reserve some time. Thank you very much for watching that for me. May it please the Court, Mike Subit for Appellee Aubrey McMahon. World Vision and its NICI ask religious employers to grant them carte blanche discrimination. Focusing on the ministerial exception, if Ms. McMahon is a minister, very few employees of religious organizations will not be. Why is that? Because, as the district court found, every single required religious duty of Ms. McMahon is true for every other World Vision employee, including what you just mentioned, the requirement to pray internally. That is a requirement at World Vision. I agree. And I think if we were just looking at that, this would be a different case. I'm just one of three, so take that for what it's worth. But what I'm particularly concerned about is the way this organization defines its mission, right, and that it defines interacting with donors, even praying with donors, but interacting with donors as part of its mission, right? So I can imagine being an employer and saying, if I'm, you know, talking to donors and working with donors and professing to be a person of this particular faith, right, that it could be devastating to our organization, either internally, if the rest of the group, you know, this is more of a spree to court and nonprofit, but this person isn't walking the walk. That could be a problem internally for an employer of this type. But also that it could be devastating to relations with donors if there was a discovery that this person wasn't consistent with this particular faith. What about that? That seems to be very legitimate to me. So the issue here, first of all, there's no way, it's hard, they don't explain how a don't, she worked from a call center remotely, so it's no idea how either anyone could have found out she was in. But so the role model cases don't work. Can I just, just so you don't leave that. I mean, that was troubling for me, too, because the record goes into this in some length. She's asked that question. She responds by saying, I'll stick to the, I'm aligned, she initially said, in that she was going to stick to the script. I'm asking something a little bit different, which is shouldn't an employer, an institution of faith that is relying on trust and, you know, with their donors, that it's terribly important to keep that faith and to be legitimate and sincere in the representations made to their donors. Well. Why not? There's no, you know, if, in fact, there was, she had a problem following the World Vision's line in what she stated, there would be a problem. But you're saying something different, sir. Forgive me for interrupting, but you're saying something different. You're saying that World Vision should have to rely on her not being truthful to donors or hoping it doesn't come up in conversation or something. Look at the focus of discrimination. The focus of the discrimination is they have a policy of people in same-sex marriage. They do not have a policy against people who believe in same-sex marriage. And so the same concern could happen with an LGTTQ person who favors same-sex marriage or a straight person who does. And so it doesn't justify the terms of the discrimination, which is we will only hire people in same-sex marriage. Those are going to the freedom of expression claims as opposed to the ministerial exception. Right. And I don't mean to bleed into that because we're trying to focus on the ministerial exception. So maybe I'm sidetracking you. I've got a question for you on that too. If these 65 or 80 employees are not ministers, then who is a minister in the World Vision organization? I think the question, I think, for example, if she would have been applying for the director of donor services, if she was setting policy, if she weren't just following a script, if she was a job that depended, like you were on the Alcazar panel, as was Judge Gould, and you looked to whether the person was hired in part for their religious training. This is a call center job customer service. But what you just said in terms of the qualifications of the director of the center didn't sound much different to me than the requirements of a customer service representative. No, no, no. I'm explaining for her job, not for the director job. But my question is a more general one. If these people aren't ministers, then show me a minister in World Vision. Who would you agree is a minister? Let's take an example of the Alcia Hernandez case. That's someone who, again, was the press secretary for the organization. And they were the ones interacting with the public in general. But it's the CSRs who are the ones that on a daily basis are interacting with the public. It's not the director of the section. Again, the problem with this is looking at that example, they say the same obligations to preach the ministry also apply to their ops people, to their marketing people. They do the same things and the duty to talk to donors. So the result, if this is the rule, then anyone who interacts with the public on behalf of religious employers going to be a minister. I will ask opposing counsel on rebuttal that question which I meant to ask him earlier as to how broadly does this rule apply. But I'm trying to probe with you whether there are any positions within the organization that you would agree would be subject. And what I'm hearing you say is, well, they have to be a high-ranking official of World Vision. They don't. And let me get back to the criteria that the Supreme Court has used because they told us in Our Lady of Guadalupe that applies to certain key roles, certain important positions. But a teacher is not making policy for the Catholic diocese that runs the school. Absolutely not. And that's just one of the – the Alito-Kagan concurrence in Hosanna-Tabor was largely adopted by the court in Our Lady of Guadalupe. And Justice Alito gave us there four examples of what would be an important key position. One was a leadership position. Two, those who were important functions in worship service and the performance of religious ceremonies or rituals. And three, those who were entrusted with teaching and conveying the tenets of the faith to the next generation. So that's – can I just stop you right there? Yeah. I appreciate this. I think it's very grounding. But it goes back to that sort of works if you're talking about a fact pattern where you're talking about a church where there's a congregation and people come in the door and worship on Sunday or something. Right? But this group defines its mission differently. So what do we do about that? It seems to me when Chief Justice Roberts said what is important is what does the person do, that we do have to look at that in relation to the particular ministry. To get back to your saying, the particular ministry is, of course, delivering aid to hungry children. So I think the people – those individuals who would be dealing with the people receiving the aid could very well be potentially ministers. Call those people missionaries. Right. Okay? We don't know very much about them because, as I understood counsel's answer, we didn't really focus on offshore activities. So just looking at World Vision USA, we have a call center. Right. We have these people who man the call center. Right. And I don't know what the other 915 do, but your argument is that they're taking the position that every single employee is a minister. They did indeed take that position in the district court, and that's the problem. If these are ministers, then everyone at World Vision is going to be a minister. I don't think so. I don't see why we would need to rely upon the internal preying. That might be presented in a different case. But, you know, when I ask the question about is this a floodgate, is this an issue, you know, we typically rule on just what's before us. Of course. Right? And what's before us is somebody who has this particular job duty. I mean, I can imagine there would be good reason to write this opinion narrowly and as precisely as possible to provide guidance, but we don't typically go beyond what's in front of us. But the question is, again, the only unique function they have, and we agree, is the option to pay with donors. That is the only thing that they do differently. Why is that not enough? Because it is an outward-facing, you know, they're spokespersons for this agency. Well, as the mickey for, they say, everyone employed by a religious organization is a spokesperson. They gave the example of the facilities manager who is also a spokesperson. And so if the answer is, you know, again, drawing the line, this is far beyond what any court has allowed for the – The facilities manager have to pray with donors or pray with outwardly with – Internally, there's the internal prayers, but does the facilities manager need to pray with people? Yes, that's part of what they say is part of their duties. Yes, that is exactly – that is part of it. Everyone is supposed to carry out through ministry and witnessing. So it comes down to then the line is that anyone who is a customer that deals with the public for, again, this is a religious charity that does terrific work. And there's nothing in the Supreme Court that said merely interacting with the public is sufficient. I'm not suggesting merely interacting with the public. I'm imagining a facilities manager isn't integral to the mission here in the same way at all. Why would that person be comparable to someone who's dealing with donors to raise money to give to the poor? Well, again, from their – we're looking at the mission. The job of the customer service rep is to raise money for their good works. That is the job. And so then by definition, they have to interact with the public to raise money. So, again, you're going to have a rule that anyone who raises money for a religious organization is going to be a minister. That is far beyond the tradeoff that I think the constitution requires. This court has said that the ministerial exception is broad but only so broad as the First Amendment requires. Let's take the hierarchical church example. If the minister during Sunday service solicits donations from the congregation in order to fund the missionary work, is that acting in a ministerial function or has the minister now become just a donor solicitor? The minister is a minister regardless. The question is what's sufficient to make someone who would otherwise not be a minister a minister. And the question simply – and I don't think there's any support in any of the case law merely asking the public for money to support a worthy charity for a religious organization. And that's what you're going to have. There is no – whatever the line might be internally with World Vision, you're not going to be able to draw a line for anyone who raises money. But no religion can sustain itself without some form of income.  So you're saying if there's money involved, you can never be a minister. I'm not saying – I'm saying it's not sufficient. But one can solicit funds without engaging in prayer. Again – I'm just looking at this particular job description and how it's done here. And the question is whether praying with another person is by itself to make you a minister. And I think it's not true either legally or factually. First of all, two court cases, the Palmer case and the Califano case, both said praying with students is insufficient. And second, one human being prays to another all the time. People do that as an act of empathy. And that does not make you a minister. My clients have offered to pray with me. They didn't – they weren't ministers. And so I think focusing on the two things, which is raising money, which they do differently, and interacting with the public with the option to pray, again, you're going to bring every person who raises money, who in fact interacts, I think, with the public for a religious organization as part of their job. It's all going to be mission critical. I mean, again, the IT person who runs the system is mission critical. But I understand what you're talking about. And so this is the problem, the line you're drawing. I would beg to differ that the IT person or the person in charge of leasing the facility is integral to the mission in the same way we're talking about. I think it's a qualitative difference. I understand what you're saying. It just can't be a but-for test. That's what I'm saying. You have to look specifically at what the job is. What would you have us do? To affirm the district court. Okay, failing that. How would you have us draw the line? I don't – I mean, I think your concern is justified, as I said earlier. Title VII, these are important employment protections. And, of course, we're trying to balance. But I don't see this job as – I don't think the test is going to work if it's a matter of sort of looking at each function in isolation. Absolutely. Right? And I've been pretty clear – again, I'm one of three, so whatever. Who knows what will happen in the back room when we conference? Maybe I'll get outvoted. But it does seem to me to be really critical to look at what this person does in relation to the mission. I've been very upfront about that. Absolutely. So you can push back on it. And in this case – well, just give me one more shot. What do you think I'm missing? Well, I think you're missing is what the job description is, which is what everyone agreed what this person would have done. And ten out of the 13 requirements are all secular. And two of the three religious ones apply to every single employee at World Vision. But why wasn't that – the Supreme Court said that was good enough in the teacher cases. What was? I'm sorry. That the bulk of their time was spent on basically teaching secular subjects, but a smaller amount of time was devoted to teaching their students the principles of the Catholic faith. This isn't a bulk of the time thing. I mean this is like – this is about – you look at the job description. What did World Vision expect them to do? Well, actually, I'm going to push back on that. It isn't a bulk of the time thing. I don't think we count up tasks. I don't think we count up hours. The Supreme Court has said as much. But where was the religious school? They said that's a really important function. That mission is indoctrinating kids, teaching them, raising them up in the faith. So that's – I'm trying to take that rule and apply it here. How does it map here onto this fact pattern? And again, the purpose of the – the mission of the organization is to give humanitarian services to needy people. And of course, they have to raise money to do that. And again, I think the difficulty here is if you say that simply raising money on behalf of a religious organization where you're going to engage in prayer, you're going to exclude a huge swath of people from all legal protection, state and federal. And that is really the question. Not every religious organization has as its central mission raising money for the poor. Not all of them do. Many are – well, some are religious schools. Some are – have the type of congregation that we've just been discussing. So I think your floodgates argument is a stretch. Well, Your Honor, again, I think this case is – I think you suggested earlier is quite different than any of the other cases that's out there. And you would be pushing the ministerial exception, I believe, a lot farther than either this court or any other court has pushed it in terms of taking people whose jobs are essentially secular and whose jobs don't have any of the hallmarks that I just mentioned of what the Supreme Court considers important religious functions. The Buddhist case comes pretty close to covering people who are engaged in activities that some might consider to be purely secular. And we said not necessarily so under this particular case. I think you have to focus on the Barron case. Again, the court analogized it to the prior Alcazar case. That was a person who was a minister in training. And so once you're a minister in training, as what Alcazar says, you're no different than a minister. These folks are not minister in training. But they don't have a seminary. They have some sort of a training function, but it's not clear to me exactly what they're trained to do. Substantively, the training is the same other than the fact that they're trained to deal with donors. It's longer because they have to train the donors. But the religious aspects of the training – and this is in the record – is the same for every World Vision employee. I think I'm past my time. Thank you very much. Thank you. Judge Talman, you asked how broadly does the rule apply. The answer is two representatives. That's the question before this court. That's the only thing this court needs to resolve. I thought you took the position below with the district court that it covered all of your employees. Did you not? No, Your Honor. If you look at FER 4 through 5, you see that we're expressly distinguished and say that we're only talking about ministers – I mean only talking about representatives. And even if we had taken that position below, this court – I think you did. It's a legal question for this court to resolve, not our position. That matters. Okay. I think you did. That was my read of the record as well somewhere in there that that had been the position. And, you know, your point is well taken. This could be written narrowly. It is also the case that whenever we publish, we're looking at every comma because it's going to apply to lots and lots of people. Certainly, Your Honor. So how would you have us craft this rule? Your Honor, I think you can look at the opposition brief at page 33 that concedes that the district court was correct in finding, quote, representatives perform a uniquely important religious function at World Vision by praying with donors. So, okay, praying with donors. So you would not have us rope in – include the internal prayers? Well, I think that's important, too, Your Honor. I think – so the Supreme Court looks at – That's why I asked you how you would have us craft this rule. Correct, Your Honor. And what you just articulated had to do with the outward facing. Correct, Your Honor. I think that's dispositive. So the – what courts do in ministerial exception case is they look at all of the duties that an employee performs that have religious significance. And I think this court would want to lean on that concession that was a correct finding in the lower court. And I think that's what makes this case a straightforward application of Our Lady and other cases. Your Honor, just two quick corrections. My friend on the other side said that every single duty is required of all employees. That's incorrect. I think the concession in Op 33 gets to that. Also, he correctly quoted three of the four components, hallmarks that Justice Alito and Justice Kagan identified in the Hosanna-Tabor concurrence, which then went into the Our Lady case. But the fourth one, which he didn't mention, was being a messenger of the faith. And that's expressly what representatives are required to do here. But what about the person who's in charge of facilities? Your Honor, a person who – a vendor who's in charge of a facility is not going to be a minister under this court's test. Under this organization's mission, right? Yes, Your Honor. And I think that's part of the – And that's the same with the IT guy. Right. So the – But what if this organization required the – I think he does – requires or says that somewhere in the record, let's imagine a hypothetical organization that requires everybody to pray internally every day, regardless of their job duty, the person who cuts the grass, the person who works in the cafeteria, right, all of them. And you would have us look at what that person does and what – how key that role is in relation to the mission of this organization. Correct, Your Honor. And I don't think – I think that all the rule that this court writes can be keyed to the specific and unique functions of representatives and doesn't have to reach all the things that are shared with every other employee. So it wouldn't necessarily apply to a checker at a union gospel mission or a Goodwill thrift store? Well, not necessarily, Your Honor. I think that's going to depend on the facts of each case, and that's not what's in front of this court. Okay. Counsel, your time is – you're over time by a few minutes. Thank you, Your Honor. But, of course, you should correctly answer Judge Christen or Judge Tolman if they have more questions. I don't have anything. No. Thank you. Thank you both. Thank you both very much. Thank you. If nothing further, then that case shall be submitted. And the court will take a ten-minute recess. All rise.
judges: GOULD, TALLMAN, CHRISTEN